```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                              LEXINGTON

DAN DUFFY,                        )
                                  )  Civil Action No. 5:05-205-JMH
     Plaintiff,                   )
                                  )
v.                                )
                                  )  MEMORANDUM OPINION AND ORDER
CITY OF STANTON, KENTUCKY,        )
                                  )
     Defendant.                   )
                                  )
```

**  **  **  **  **

Before the Court is the summary judgment motion of Defendant, the City of Stanton, Kentucky ("the City") [Record No. 36]. Plaintiff responded to Defendant's motion [Record No. 38], to which Defendant replied [Record No. 40]. Plaintiff's motion to amend his complaint is also pending before the Court [Record No. 39]. As both motions are now fully briefed, this matter is ripe for review.

## BACKGROUND

Plaintiff, Dan Duffy, pro se, filed the present action against the City of Stanton, Ed Hash, the City's Code Enforcement Officer, and B. Scott Graham, the City Attorney. In late March of 2005, Plaintiff claims that Ed Hash informed him that the City was planning to remove certain vehicles from the property he was leasing. On April 12, 2005, in response to complaints and because Plaintiff had not moved the vehicles, Mr. Hash had three of Plaintiff's vehicles towed. Plaintiff wrote to the City on April 18, 2005 and requested that it return his vehicles. The City

1

Attorney, B. Scott Graham, responded to Plaintiff's letter and informed Plaintiff that his cars were moved because they were in violation of the City's nuisance ordinance and zoning ordinance. Plaintiff wrote to the City Council to demand to the return of his vehicles.  On May 19, 2005, Plaintiff filed a complaint in this Court naming Ed Hash, B. Scott Graham, and the City as Defendants and alleging constitutional violations and state law claims for trespass, malice, and conversion.  By agreed order, the parties dismissed Ed Hash and B. Scott Graham as Defendants on August 2, 2005 [Record No. 26].  The City asks the Court to enter summary judgment in its favor on all remaining claims in Plaintiff's complaint.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial.  *Id.* at 325.  A fact is material if its resolution will affect the outcome of the lawsuit.  *Waters*

*v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001); *see Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407 (6th Cir. 2003) ("If, under the governing law, the outcome would be the same regardless of how a factual dispute is resolved, the dispute is no bar to summary judgment."). Once the moving party satisfies its burden, the burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

When determining whether there is enough evidence to overcome summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, in this case, the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). The Court must not weigh the evidence, but must decide whether there are genuine issues for trial. *Anderson*, 477 U.S. at 249. Only material factual disputes will preclude summary judgment, and the dispute must be genuine, that is, the facts must be such that if proven at trial, a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

## ANALYSIS

The Court begins its analysis by noting the Supreme Court's admonition in *Haines v. Kerner*, 404 U.S. 519 (1972), that a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Id.*

3

at 520.

I.   *Defendant's Motion for Summary Judgment*

   A.   *Plaintiff's Claims Against the City for Violating His Due Process Rights*

Plaintiff's complaint appears to allege that the City is liable to him under 42 U.S.C. § 1983 for towing his cars without providing him due process of law.  To prevail on this claim, a § 1983 plaintiff must demonstrate that the property deprivation resulted from either:  "(1) an established state procedure that itself violates due process rights, or (2) a 'random and unauthorized act' causing a loss for which available state remedies would not adequately compensate the plaintiff."  *Warren v. City of Athens*, 411 F.3d 697, 709 (6th Cir. 2005) (quoting *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991)).  In this case, Plaintiff is asserting a claim under the first scenario.

"The Due Process Clause of the Fourteenth Amendment does not prohibit every deprivation by the state of an individual's life, liberty or property.  Only those deprivations carried out without due process are actionable under 42 U.S.C. § 1983."  *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  Due process

requires that Plaintiff be given the opportunity to be heard "at a meaningful time and in a meaningful manner." *Id.* at 333 (citations omitted). Because it is a flexible concept, the procedural protections afforded by due process will vary depending on the particular situation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To determine what process is due, three factors must be weighed:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

The court in *Harris v. County of Calhoun*, 127 F. Supp. 2d 871 (W.D. Mich. 2001) found that "'the uninterrupted use of one's vehicle is a significant and substantial private interest.'" *Id.* at 876 (quoting *Scofield v. City of Hillsborough*, 862 F.2d 759, 762 (9th Cir. 1988)); *see also Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994) (finding that the use of a motor vehicle constitutes a protected property interest under § 1983); *Price v. City of Junction*, 711 F.2d 582, 589 (5th Cir. 1983) (holding that "[w]hether a junk car has little or great value, it is constitutionally protected property").

To weigh the second factor under the *Mathews* analysis and thus

5

consider the risk of erroneous deprivation through the procedures used by the City and the probable value of additional safeguards, the Court must review the City's procedures for removing junk vehicles. The City has enacted a nuisance ordinance ("the Ordinance"), No. 89-9 Public Nuisances & Penalties, which provides that "[i]t shall be unlawful for any person owning, occupying or having control or management of any land within the city limits or within one mile therof to have upon said land junk automobiles, trucks, tractors, buses, vans, or other motor vehicles." Stanton, Ky., Ordinance 89-9 Public Nuisances & Penalties (May 5, 1989). Pursuant to Article III, Section 300 of the Stanton Zoning Ordinance, if the Enforcement Officer "finds any provisions of the Ordinance being violated, the person or persons responsible for such violation shall be notified . . . through registered mail." Stanton, Ky., Zoning Ordinance art. III, § 300. This section of the City's zoning ordinance delegated to Ed Hash, the Enforcement Officer, the authority to enforce the City's ordinances.[1]

---

[1] The City enacted the Ordinance pursuant to state law. "Local government may, by ordinance, enact a nuisance code and impose penalties for violation of the nuisance code." KRS § 82.705. KRS § 381.770 provides that "it shall be unlawful for the owner, occupant or person having control or management of any land within a city, . . . to permit a public nuisance, health hazard, or source of filth to develop thereon through the accumulation of: (a) Junked or wrecked automobiles." KRS § 381.770(2). Under this statute, "Any city, . . . may establish by ordinance reasonable standards and procedures for the enforcement of this section. . . . Proper notice shall be given to property owners before any action is taken pursuant to this section." *Id.* § 381.770(5); *see also* KRS §§ 82.710-.715 (outlining

6

Finally, the Court must balance Plaintiff's property interest in his vehicles and the risk of erroneous deprivation of that interest due to the City's procedures with the City's interest. The City's Ordinance advances the City's interest in towing junk vehicles to abate a public nuisance and to encourage vehicle owners to maintain the City's appearance. The City's current procedure under Article III, Section 300 is to notify the owner through registered mail before the vehicles are towed.

Plaintiff never argues that the City failed to provide him with pre-tow notice of the City's plans to remove the vehicles. Plaintiff admits that Mr. Hash told him in March of 2005 that the vehicles would be removed if Plaintiff did not remove them. (Pl.'s Dep. 45:5-46:10, Nov. 17, 2005.) The City submits that Mr. Hash complied with the notice provisions in Article III, Section 300 by sending Plaintiff several certified letters asking him to remove the cars, all of which were returned as unclaimed. This practice of notifying Plaintiff before the vehicles are towed serves to prevent the City from erroneously towing vehicles. By telling Plaintiff in person that he was violating the ordinance and warning Plaintiff that the City was planning to remove the vehicles, the City provided Plaintiff with the opportunity to comply with the law by relocating the offending vehicles or to protest their removal

---

the requirements a local government must follow if it elects to enact and enforce a nuisance code).

*before* he was deprived of his property.[2]

Likewise, Plaintiff concedes that Mr. Graham's April 20, 2005 letter provided him with post-tow notice of the City's removal of the vehicles. Mr. Graham replied to Plaintiff's first letter of April 18, 2005 and informed Plaintiff that (1) his vehicles were in violation of the City's nuisance Ordinance; (2) prior to their removal, Mr. Hash had informed Plaintiff that the vehicles would be removed by the City because of the violation; and (3) he could recover his vehicles by contacting the man who towed the vehicles at the City's request, John Tharpe, and paying Mr. Tharpe towing and storage fees.

Plaintiff does not specifically raise the argument that he was not provided with a post-tow hearing, but instead explains that he promptly wrote letters to the City and to the members of the City Council and attended City Council meetings, but his complaints were never addressed and his vehicles were not returned to him. The

---

[2] Although due process generally requires that a property owner is entitled to both prior notice and an opportunity for a pre-deprivation hearing, *see Harris*, 20 F.3d at 1401, there is recent authority in the Sixth Circuit, *see Ross v. Duggan*, 402 F.3d 575, 584 (6th Cir. 2004), and substantial authority in other circuits upholding the proposition that the absence of pre-towing process is constitutionally permissible where prompt post-towing notice and a hearing is provided. See, for example, *Soffer v. City of Costa Mesa*, 798 F.2d 361, 362-63 (9th Cir. 1986); *Breath v. Cronvich*, 729 F.2d 1006, 1010-11 (5th Cir. 1984), *cert. denied*, 469 U.S. 934 (1984); *Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir. 1982), all concluding that the due process clause is not violated when a vehicle is towed by the city without first giving the owner notice and an opportunity to be heard with respect to the lawfulness of the tow.

8

City argues that if Plaintiff believed that the City erred in towing his cars as junk vehicles, his letters to the City and the City Council were insufficient to appeal the towing. Instead, Plaintiff should have appealed to the Board of Adjustments ("the Board") per KRS § 100.257, which provides:

> The board of adjustment shall have the power to hear and decide cases where it is alleged by an applicant that there is error in any order, requirement, decision, grant, or refusal made by an administrative official in the enforcement of the zoning regulation. Such appeal shall be taken within thirty (30) days.

KRS § 100.257. The City argues that, to appeal official action taken by a zoning enforcement officer, the party "claiming to be injuriously affected or aggrieved by an official action, order, . . . or decision of any zoning enforcement officer" must file a notice of appeal with the zoning enforcement officer and with the Board specifying the grounds for the appeal. KRS § 100.261.

Based on the evidence presented, Plaintiff never appealed the towing to the Board. He complained to the City and to the City Council members, but he never appealed to the Board or to Mr. Hash. If the City erred by towing vehicles that were not "junk vehicles" under the Ordinance, Plaintiff had the opportunity to appeal that decision to the Board. Plaintiff cannot argue that the City deprived him of a review of the towing if he never followed the law providing for that post-towing review.

Plaintiff has failed to present a genuine issue of material fact as to whether he was afforded due process of law by the City

9

when its enforcement officer had his vehicles towed. The City's ordinance provides for pre-deprivation notice, which Plaintiff received when Mr. Hash personally told him of the violation, and Kentucky law provides for a post-deprivation appeal of a zoning enforcement officer's action, which Plaintiff has never sought. *See Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004) ("A party cannot create a due process claim by ignoring established procedures.").

    B.   *Plaintiff's Claims Against the City for Violating His Fourth Amendment Rights*

Plaintiff claims that the City's seizure of his vehicles was unreasonable because his vehicles did not qualify as "junk vehicles" under the City's ordinance. Plaintiff alleges that this unreasonable seizure was prohibited by the Fourth Amendment, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. This Amendment applies to the actions of municipal officials who seize private property to abate nuisances. *See Soldal v. Cook County*, 506 U.S. 56, 61-62 (1992); *Michigan v. Tyler*, 436 U.S. 499, 504-07 (1978); *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 530 (1967); *Gould v. Symons*, 275 F.

Supp. 2d 843, 845-46 (E.D. Mich. 2003).

In *United States v. Jacobsen*, 466 U.S. 109 (1984), the Supreme Court explained that a seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Id.* at 113. To be actionable, a seizure of property must be objectively unreasonable. *See Soldal*, 506 U.S. at 71. To assess whether that seizure was unreasonable, the Court must "'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion.'" *Autoworld Specialty Cars, Inc. v. United States*, 815 F.2d 385, 389 (6th Cir. 1987) (quoting *Jacobsen*, 466 U.S. at 125). The Court's determination that the City provided Plaintiff with due process of law when it removed his vehicles contributes to, but does not preclude, the separate inquiry into the reasonableness of the seizure under the Fourth Amendment. *Samuels v. Meriwether*, 94 F.3d 1163, 1167-68 (8th Cir. 1996) (citing *Soldal*, 506 U.S. 56).

By authorizing the towing Plaintiff's vehicles from his rental property, the City seized them. Plaintiff contends that because his vehicles were insured, covered by a Kentucky dealer license, and operable, his vehicles were not "junk vehicles." In response, the City claims that it is "unaware as to whether or not the vehicles were operational," and instead argues that Plaintiff was required to exhaust his administrative remedies. The City's

11

argument that Plaintiff must exhaust his administrative remedies before suing in federal court for a violation of his Fourth Amendment rights is not a correct statement of the law. *See McNeese v. Board of Educ.*, 373 U.S. 668, 672 (1963) (concluding that if litigants were required to exhaust administrative remedies before asserting a § 1983 claim in federal court, it "would defeat [the] purposes" of § 1983 as a supplementary remedy and stating that the federal courts are the "chief . . . tribunals for enforcement of federal rights").

On balance, however, when comparing the nature and quality of the seizure with the City's interests in enforcing its ordinance and abating a nuisance, the Court is in agreement with the City on Plaintiff's Fourth Amendment claim. The City's stronger argument, and one with which the Court agrees, is that Plaintiff was given the notice of his violation and an opportunity to protest the City's decision to tow his vehicles before the vehicles were seized. The City has presented evidence of its attempts to notify Plaintiff of his ordinance violation through registered mail in February and March of 2005, and Plaintiff concedes that he was notified of this violation at least two weeks before the vehicles were towed on April 12, 2005 from the parking lot of his business.

In this case, the City notified Plaintiff in advance of the seizure and followed its Ordinance providing for the abatement of public nuisances. Just as Plaintiff cannot create a due process

12

claim by failing to avail himself of the appeals process provided for under state law, Plaintiff's decision to wait and bring suit in this Court instead of protesting the violation when he was given both notice by the City and time to comply with the Ordinance does not give rise to a claim under the Fourth Amendment for unreasonable seizure. Viewing the facts in the light most favorable to Plaintiff, Plaintiff has not presented a genuine issue of material fact as to whether the City's seizure of his vehicles as junk vehicles under the Ordinance was unreasonable, and therefore, summary judgment is appropriate on this claim.

   C.  *Plaintiff's State Law Claims*

As both of Plaintiff's federal claims have been dismissed, the Court declines to exercise jurisdiction over Plaintiff's pendent state law claims. 28 U.S.C § 1367(c)(3).

*II.  Plaintiff's Motion to Amend His Complaint*

Plaintiff has asked the Court for leave to amend his complaint to add the following parties: Mayor Virginia Wills, John Tharpe, Ed Hash, and B. Scott Graham. In his motion, Plaintiff is attempting to revive his "malice" claim against Mr. Hash. As previously noted, the claims against Mr. Hash and Mr. Graham were dismissed with prejudice by agreed order on August 2, 2005 [Record No. 26]. Plaintiff appears to be asserting a negligence claim against Ms. Wills for hiring Mr. Hash and a negligence claim against Mr. Graham for failure to supervise Mr. Hash. Plaintiff

does not make out a claim against Mr. Tharpe, but simply states that he was contracted by Mr. Hash to tow and store Plaintiff's vehicles.

The Federal Rules of Civil Procedure provide that a party may amend its pleading by leave of court, leave that shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). However, the Court can deny leave to amend on the basis of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001).

This motion was filed more than three months after the deadline imposed by the Court's scheduling order. Plaintiff has not shown any justification for failing to move to amend his complaint earlier in the litigation. The Court stresses that both the discovery deadline and the dispositive motion deadline had passed when Plaintiff filed his motion to amend. If the Court were to grant this motion — especially after discovery has closed and the City has already filed a motion for summary judgment — the defendants would be unduly prejudiced. The plaintiff has been

aware of the basis of his claims against Ms. Wills, Mr. Graham, and Mr. Tharpe for several months, if not before he commenced this litigation. In fact, Plaintiff described Mr. Graham's and Mr. Tharpe's involvement in this matter in his complaint. Affirming a district court's decision to deny the plaintiff's motion to amend her complaint in *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828 (6th Cir. 1999), the Sixth Circuit stated:

> Plaintiff delayed pursuing these claims until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed. There appears to be no justification for the delay, and the plaintiff proposes none. Allowing amendment at this late stage in the litigation would create significant prejudice to the defendants.

*Id.* at 834. The Court likewise finds that Plaintiff's motion to amend his complaint is denied.

## CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED**:

(1) that Defendant's motion for summary judgment [Record No. 36] be, and the same hereby is, **GRANTED**; and

(2) that Plaintiff's motion to amend his complaint [Record No. 39] be, and the same hereby is, **DENIED**.

This the 24th day of March, 2006.



Signed By:
*Joseph M. Hood*
United States District Judge

15